**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN GOLYA** | : | |
| **Plaintiff** | : | |
| **v.** | : | **3:CV-05-0100** |
| | : | **(JUDGE VANASKIE)** |
| **STEPHEN GOLYA, ROBERT EVANS,** | : | |
| **TODD ROMANCZUK, THE DURYEA** | : | |
| **POLICE DEPARTMENT, HUGHESTOWN** | : | |
| **POLICE DEPARTMENT** | : | |
| **Defendants** | : | |

## MEMORANDUM

Nearly two years after a District Magistrate Judge dismissed criminal charges against him, Plaintiff John Golya commenced this lawsuit under 42 U.S.C. § 1983 and Pennsylvania common law, seeking redress for harm allegedly inflicted by the attempted prosecution instigated by his brother, Defendant Stephen Golya ("Defendant Goyla"), who was then a police officer with the Hughestown Police Department ("HPD").[1] (Dkt. Entry 1.) Plaintiff's complaint consists of seven counts. Count I asserts claims under Monell v. Department of Social Services, 436 U.S. 658 (1978), against the Duryea Police Department ("DPD") and the HPD. In Count II, Plaintiff claims Defendant Golya is liable because he failed to adequately supervise his purported subordinate, Defendant Robert Evans ("Officer Evans"). Count III is an amalgamation of five separate claims presented under 42 U.S.C. § 1983 – malicious

---

[1]This Court has jurisdiction to adjudicate Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a).

prosecution, "seizure," abuse of process, false arrest, and conspiracy – against Defendant

Golya, Officer Evans, and Todd Romanczuk.  The final four counts raise state law claims of

defamation, invasion of privacy, false arrest, and civil conspiracy against the individual

Defendants.[2]

Presently before the Court are Motions for Summary Judgment filed by Defendant Golya

and HPD, (Dkt. Entry 43), and Officer Evans and DPD.  (Dkt. Entry 50.)  For the reasons set

forth below, the motions for summary judgment will be granted.

## I. BACKGROUND

### A. Factual Background

The criminal prosecution underlying this civil rights lawsuit arose from Defendant Golya's

allegations that his brother, the Plaintiff, unlawfully removed appliances – appliances Defendant

Golya claimed are his – from their deceased parents' apartment.[3]  Mr. and Mrs. Golya moved

into the Duryea, Pennsylvania, apartment in the summer of 2000 after they were forced from

their previous residence in Port Blanchard, Pennsylvania, due to carbon monoxide poisoning.

(Pl. Aff., Ex. Y to Pl.'s Exs. Opp'n to Defs.' Mots. Summ. J. ("Pl.'s Opp'n Exs."), Dkt. Entry 63-

26, ¶ 4, 7-8.)  As the parents recovered in a hospital, Defendant Golya and his sister, Diane

---

[2]Plaintiff misnumbered the civil conspiracy and false arrest claims as Counts V and VI, respectively, rather than Counts VI and VII.  When necessary, the Court will refer to the invasion of privacy and civil conspiracy claims as "Count V – Invasion of Privacy" and "Count V – Conspiracy."

[3]The Golyas' parents will be referred to as "Mr. and Mrs. Golya."

Armoa, undertook a search for an apartment where their parents could relocate.  (Armoa Dep., Apr. 24, 2006, Ex. B. to Pl.'s Opp'n Exs., Dkt. Entry 63-3, at 15:14-16, 21.)  They eventually found an apartment at 700 Rear Main Street, Duryea, a building owned by Mr. Romanczuk.  (Id. 15:23-25; Pl. Aff. ¶ 13.)  Defendant Golya and Mr. Romanczuk were acquainted prior to the parents leasing the apartment, though the record does not reveal the extent of this relationship.  (Prelim. Hr'g Tr., Jan. 27, 2003, Ex. G to Pl.'s Opp'n Exs., Dkt. Entry 63-8, at 6, 8.)

Defendant Golya purchased several appliances for the apartment.  (Armoa Dep. 17:4-8, 28:1-9.)  He initially purchased a gas-powered Magic Chef Range from Voitek TV and Appliances, Inc., but upon learning the apartment was equipped only for an electric range, he exchanged the gas range for an electric-powered Hot Point Range.  (Exs. I & J to Pl.'s Opp'n Exs., Dkt. Entries 63-10 & 63-11 (receipts from Voitek); Prelim. Hr'g Tr. 31, 33.)  He also bought a dryer for the apartment.  (Ex. J to Pl.'s Opp'n Exs.)  Defendant Golya claimed that the appliances were "loaned" to his parents for their use, rather than gifts, and he intended to donate the appliances to charity after his parents died.  (Prelim. Hr'g Tr. 42-43.)

Mrs. Golya passed away in 2001.  Mr. Golya became ill in the spring of 2002 and died on May 25, 2002.  Prior to his death, he asked Plaintiff and Ms. Armoa whether either wanted any of his belongings.  Both declined.  Mr. Golya then expressed his desire that his property go to Mary Fahley, the ex-wife of Joe Golya, Plaintiff's brother.  (Pl. Aff. ¶ 56.)  Plaintiff did not object.  Mr. Golya's wishes were relayed to Ms. Fahley and arrangements were made to

3

remove the property.

The property was removed on the weekend of June 16, 2002.  Ms. Fahley removed numerous items, including the dryer and Hot Point Range.  Plaintiff, Ms. Armoa, Ms. Fahley, and others testified that Plaintiff was not present at the Duryea apartment when the property was removed.  These witnesses also stated that, from the time of Mr. Golya's death until the Duryea apartment was emptied and possession reverted to the landlord, Defendant Golya never contacted Plaintiff or other family members to claim the dryer or range or otherwise make arrangements to retrieve these appliances.  In fact, Defendant Golya never went to the Duryea apartment during this period, although he had his own key to the apartment.

Sometime between June and November, 2002, Defendant Golya learned the appliances he purchased for his parents were removed from the Duryea apartment.  The record does not indicate how Defendant Golya discovered the appliances were removed or why he suspected Plaintiff was responsible.  On or before November 13, 2002, Defendant Golya reported the alleged theft of the appliances to Charles Guarnieri, DPD Chief of Police.  (Defs. Golya's & HPD's Statement of Material Facts ("SMF - Golya & HPD"), Dkt. Entry 45, ¶ 7.)  Defendant Golya asserted that it was Plaintiff who had unlawfully removed appliances from their parents' apartment.  (Id. ¶ 8.)  Chief Guarnieri assigned the investigation to Officer Evans.  (Id. ¶ 9.)

Officer Evans began working for the DPD as a patrolman in June of 1999.  (Id. ¶ 5.)  Officer Evans has known Defendant Golya since approximately 2001.  (Evans Dep., Ex. 2 to

4

Defs. Golya's & HPD's Exs. Supp. Statement of Material Facts ("Golya & HPD Supp. Exs."),

Dkt. Entry 46, at 4:21-22.)  At the time, Defendant Golya was a police officer with the HPD.

Officer Evans and Defendant Golya were acquainted through law enforcement-related

activities.  For instance, Officer Evans testified to a cooperative agreement between HPD and

DPD whereby each department provided assistance to the other upon request.  (Evans Dep.

5:25-6:5.)  Officer Evans responded to calls for assistance from Defendant Golya, though this

was sporadic because they usually worked different shifts.  (Id. at 6:1-2.)  Officer Evans denied

that he engaged in social activities with Defendant Golya.  (Id. at 4:25-5:4.)[4]

After the investigation was assigned to him, Officer Evans contacted Defendant Golya to

arrange a meeting to discuss what happened.  (Id. at 7:19-22.)  Defendant Golya provided a

written statement dated November 16, 2002, and purportedly written at the HPD station.[5]

---

[4]In March or April, 2003, Officer Evans began working for the HPD.  (Defs. Evans's &
DPD's Statement of Material Facts ("SMF - Evans & DPD"), Dkt. Entry 51, ¶ 35.)  He is
currently employed by several police departments, but works primarily for the HPD.  (Evans
Dep. 2:13-19.)  On January 5, 2004, Defendant Golya became Officer Evans's supervisor when
Golya was promoted to HPD Chief of Police.  (Id. at 4:18-20; see also HPD's Resps. Pl.'s First
Req. Produc. Docs., Ex. Z to Pl.s Opp'n Exs., Dkt. Entry 63-27 (Constitutional Oath of Office).)


[5]Defendant Golya provided the following statement:

On or about May 26 to June 29 appliances namely a washer, dryer, and
electric stove were removed from 700 Main St. Duryea by a one John Golya.
These appliances were lent to my parents when they were alive and lived at
the above location.  The Defendant knowing who owned these appliances
took these appliances without permission from the owner (Steve Golya Jr.).

(Voluntary Statement, Ex. H to Pl.'s Opp'n Exs., Dkt. Entry 63-9.)  Officer Evans testified he

was not present when Defendant Golya wrote the statement, but was subsequently given the

statement by Defendant Golya.  (Evans Dep. 8:14-17, 9:1-3.)

 Officer Evans also personally met with Defendant Golya, which may have occurred

before Defendant Golya made the written statement.  Defendant Golya related how he

purchased appliances for his parents that were allegedly removed without his permission.  (Id.

at 9:11-12.)  Officer Evans does not know how Defendant Golya discovered the alleged theft;

he did not question Defendant Golya about the source of information that a theft had occurred.

(Id. at 9:13-15, 14:13-15, 27:20-28:6, 29:17-30:4, 32:23-33:7.)  He also did not ask Defendant

Golya why he waited until November to report the theft that allegedly occurred in May or June

of 2002.  (Id. at 15:8-14.)

 Defendant Golya furnished two receipts from Voitek evidencing his purchase of the

Magic Chef and Hot Point ranges and the dryer.  (Id. at 10:16-17.)  The appliances noted in

these receipts differed from the appliances listed in Defendant Golya's November 16 written

statement.  No attempt was made to reconcile this discrepancy.  (See id. at 21:18-22:1.)

Finally, Defendant Golya told Officer Evans that he loaned the appliances to his parents to use

as long as needed, and he intended to donate the appliances to charity upon their death.  (SMF

- Evans & DPD ¶ 50.)

---

(Voluntary Statement, Ex. H to Pl.'s Opp'n Exs., Dkt. Entry 63-9.)

Officer Evans interviewed Mr. Romanczuk, although he could not recall when the interview occurred.[6]  (Evans Dep. 9:16-19, 18:10-13.)  Mr. Romanczuk stated that he observed Plaintiff and a van or box truck outside the Duryea apartment on the day the appliances were removed.  (Id. at 10:2-5.)  He saw other people removing items, but not Plaintiff.  (Id. at 10:34, 18:12-13.)  Officer Evans did not ascertain the identities of those present at the Duryea apartment, inspect the Duryea apartment, or interview any other potential witnesses or Plaintiff.

Officer Evans decided to file criminal charges against Plaintiff based on Defendant Golya's statements and receipts, as well as Mr. Romanczuk's interview.  (Id. 13:25-14:4-6, 19:10-13.)  He credited Defendant Golya's allegations in part because he was a fellow police officer.  (Id. at 13:22.)  Officer Evans determined the appropriate charges after a review of the Pennsylvania Crimes Code.  (Evans Dep. 22:21-23:1.)  He did not consult the district attorney's office (id. at 23:6-10); however, Chief Guarnieri considered the charges and authorized the filing of the criminal complaint.  (SMF - Evans & DPD ¶ 46.)  Defendant Golya also reviewed the criminal complaint and affidavit of probable cause and approved both.  (Evans Dep. 22:8-17.)  However, Officer Evans testified that Defendant Golya did not participate in the decisionmaking process regarding whether to file charges, and if so, what charges to file against Plaintiff.  (Id. at 22:18-20.)

---

[6]Officer Evans testified that he does not retain investigation notes after the investigation is complete.  (Evans Dep. 9:20-25.)

Officer Evans prepared a Criminal Complaint and Affidavit of Probable Cause, both dated November 13, 2002.  The criminal complaint charged Plaintiff with three offenses: (1) theft by unlawful taking or disposition, in violation of 18 Pa. Cons. Stat. Ann. § 3921(a); (2) receiving stolen property, in violation of 18 Pa. Cons. Stat. Ann. § 3925(a); and (3) criminal mischief, in violation of 18 Pa. Cons. Stat. Ann. § 3304(a)(3).  (Crim. Compl. & Aff. of Probable Cause, Ex. L to Pl.'s Opp'n Exs., Dkt. Entry 63-13.)  The complaint alleged that Plaintiff unlawfully took a dryer, Hot Point Range, and Magic Chef Range.  (Id.)  The accompanying affidavit of probable cause stated:

> Police were contacted by the Victim, Steve GOLYA who stated that he purchased three household appliances from VOITEK TV and Appliances for his parents who resides [sic] at R 700 Main St. Apt.B in Duryea Borough.  He stated that after his parents were deceased the items were left at the residence.  The dates that the appliances were taken were between 05/26/02 and 06/01/02.  That is when the Defendant [John Golya] went to the residence with a truck and took the appliances without the permission of the victim.  The victim made several attempts to contacted [sic] the Defendant via phone and through his other brother to talk about obtaining the appliances back or getting paid for the appliances and received no response.
>
> The Victim provided Police with receipts of the stolen items and there [sic] values.
>
> Below is a list of the appliances and there [sic] serial numbers along with there [sic] values.  [The list contains the serial numbers for and values of the GE Electric Dryer, Hot Point Range, and Magic Chef Range, respectively.  The total value is $985.85.]

(Id.)

As noted above, Defendant Golya exchanged the Magic Chef Range for the Hot Point

8

Range because the Duryea apartment was equipped to handle only an electric-powered stove. Thus, the criminal complaint and affidavit of probable cause were inaccurate inasmuch as they alleged the theft of the Magic Chef Range.

Officer Evans filed the criminal complaint and affidavit of probable cause on November 13, 2002.  (See Bail Release Conditions, Ex. N to Pl.'s Opp'n Exs., Dkt. Entry 63-15 (noting the criminal complaint filed on 11/13/02).)  He was not accompanied by Defendant Golya when he filed these documents.  (Evans Dep. 15:15-18.)  A warrant for Plaintiff's arrest was issued.  (Id. at 28:7-8.)

The arrest warrant was not executed, however, because Officer Evans called Plaintiff and left him a message informing him of the warrant and the charges.  (Pl. Aff. ¶ 93.)  Plaintiff returned Officer Evans's phone call that evening, denied the allegations, and "asked him if he had the right guy."  (Pl. Dep.,  Ex. 1 to Golya & HPD Supp. Exs., Dkt. Entry 46, at 51:3-4, 24-25.)  Officer Evans responded affirmatively, and told Plaintiff to appear before a District Magistrate Judge at the Pittston Borough Building the following day or be arrested at his place of employment.  (Id. at 51:5-7; Pl. Aff. ¶¶ 100-01.)  Plaintiff contacted his attorney and secured representation for the appearance.

Plaintiff was arraigned on December 5, 2002, before District Magistrate Judge Pierantoni.  (SMF - Golya & HPD ¶ 14.)  Besides Plaintiff and the magistrate judge, Plaintiff's attorney and Officer Evans were present.  Plaintiff was never handcuffed during the

arraignment.  (Id. ¶ 15.)  Officer Evans wanted to process Plaintiff through the normal booking

procedures, i.e., photographing, fingerprinting, etc., but Plaintiff's attorney objected and

prevented this from occurring.  (Pl. Aff. ¶ 114.)  Plaintiff was released pursuant to a $5,000

unsecured bail bond, but no money or other collateral was required to be posted.  (SMF - Golya

& DPD ¶ 16; Bail Bond, Ex. M to Pl.'s Opp'n Exs., Dkt. Entry 63-14.)  See Pa. R. Crim. P.

524(C)(3).  In addition to the standard conditions imposed in all cases where a defendant is

released on bail, District Magistrate Judge Pierantoni directed Plaintiff to avoid "contact with

alleged victims or witnesses."[7]  (Bail Release Conditions, Ex. N to Pl.'s Opp'n Exs., Dkt. Entry

---

[7]Plaintiff was subject to the following standard conditions:

1. The defendant must appear at all times required until full and final disposition of the case.

2. The defendant must obey all further orders of the bail authority.

3. The defendant must give written notice to the bail authority, the clerk of courts, the district attorney, and the court bail agency or other designated court bail officer, of any change of address within 48 hours of the date of the change.

4. The defendant must neither do, nor cause to be done, nor permit to be done on his/her behalf, any act as proscribed by [18 Pa. Cons. Stat. Ann. §§ 4952-4953 (relating to intimidation of, and retaliation against, witnesses or victims)].

5. The defendant must refrain from criminal activity.

(Bail Bond, Ex. M to Pl.'s Opp'n Exs., Dkt. Entry 63-14.)  See also Pa. R. Crim. P. 526(A).

63-15.)  Plaintiff was, however, free to travel without limitation, and there was no requirement that he report to pretrial services.

The preliminary hearing was conducted on January 27, 2003.  Mr. Romanczuk, Ronald Golya (Plaintiff's and Defendant Golya's brother), and Defendant Golya testified for the Commonwealth; Plaintiff did not call any witnesses.  Ultimately, District Magistrate Judge Pierantoni concluded that the Commonwealth failed to demonstrate a prima facie case and dismissed the charges.  (Prelim. Hr'g Tr. 61.)

## B. Procedural History

Plaintiff commenced this lawsuit on January 13, 2005.  (Dkt. Entry 1.)  Defendants Golya and the HPD, and Evans and the DPD, respectively, filed answers to the complaint on February 11, 2005, and April 7, 2005.[8]  (Dkt. Entries 5 & 15.)  After discovery was complete, Defendants filed respective motions for summary judgment, statements of material facts, exhibits, and supporting briefs.  (Dkt. Entries 43-46 & 50-53.)  Plaintiff filed a combined opposition brief, counter-statements of material facts, and exhibits.  (Dkt. Entries 62-63.)  Defendants filed reply briefs.  (Dkt. Entries 64 & 67.)  As such, the summary judgment motions are ripe for disposition.

_____

[8]Mr. Romanczuk never filed an answer to Plaintiff's complaint, and upon Plaintiff's motion, the Clerk of Court entered default against Mr. Romanczuk.  (Dkt. Entry 32.)  Plaintiff moved for a default judgment.  (Dkt. Entry 31.)  An evidentiary hearing was held on January 4, 2006.  The Court denied Plaintiff's motion, reasoning that Plaintiff failed to establish a basis for liability against Mr. Romanczuk.  (See Order of Court, Jan. 4, 2006, Dkt. Entry 38; Hr'g Tr., Jan. 4, 2006, Dkt. Entry 68, at 20-21.)

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. Cont'l Ins. Co. v. Bodie, 682 F.2d 436, 438 (3d Cir. 1982). The moving party has the burden of showing the absence of a genuine issue of material fact, but the nonmoving party must present affirmative evidence from which a jury might return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 256-57. Mere conclusory allegations taken from the pleadings are insufficient to withstand a motion for summary judgment. Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). Summary judgment is to be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

**B. Section 1983 Claims**

Plaintiff uses 42 U.S.C. § 1983 as the vehicle to assert his civil rights claims arising from the criminal prosecution. To succeed on his § 1983 claims, Plaintiff must show a (1) violation of a right secured by the United States Constitution, and (2) the violation was committed by the defendant acting under the color of state law. See 42 U.S.C. § 1983; McAndrew v. Borough of Jim Thorpe, No. 3:CV-01-2367, 2005 WL 2387632, at *2 (M.D. Pa. Sept. 28, 2005). Plaintiff's civil rights claims implicate the Fourth Amendment's protection against "unreasonable seizures."[9]

The Court will first address Plaintiff's claims of malicious prosecution, seizure, abuse of process, false arrest, and conspiracy against Defendant Golya and Officer Evans. Next, the Court will address Plaintiff's claim of supervisor liability against Defendant Golya. Finally, the Court will address the Monell claims against the HPD and the DPD.

---

[9]Officer Evans notes that Plaintiff appears to assert § 1983 claims based on the First Amendment to the United States Constitution. Although the first paragraph to Plaintiff's complaint indicates he is seeking redress for violations of the First Amendment, (Compl., Dkt. Entry 1, ¶ 1), nothing in the complaint remotely sets forth a claim alleging a violation of that constitutional font of rights. Moreover, Plaintiff does not refer to the First Amendment in his opposition brief. Therefore, these "claims" need not be addressed.

### 1) **Malicious Prosecution**

To prevail in a § 1983 malicious prosecution action based on a violation of the Fourth Amendment, Plaintiff must establish five elements:

> (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in [the] plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

DiBella v. Borough of Beachwood, 407 F.3d 599, 601 (3d Cir. 2005) (quoting Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)).  Defendants argue that summary judgment is warranted because Plaintiff cannot establish a Fourth Amendment seizure.  Plaintiff contends that the $5,000 unsecured bail bond, the requirement to appear at the arraignment and preliminary hearing, the standard release conditions, and the prohibition against contact with the victim combine to constitute a seizure.

Plaintiff relies on Gallo v. City of Philadelphia, 161 F.3d 217 (3d Cir. 1998), which held that "pretrial restrictions on travel and required attendance at court hearings" constitute a Fourth Amendment seizure.  Id. at 222-24.  Our Court of Appeals, however, subsequently retreated from this position, concluding that an appearance at court proceedings is not a Fourth Amendment seizure because "[t]he type of constitutional injury the Fourth Amendment is intended to redress is the deprivation of liberty accompanying prosecution, not prosecution itself."  DiBella, 407 F.3d at 603 (citing Albright v. Oliver, 510 U.S. 266, 274 (1994) (plurality

opinion)).  Instead, only "[p]retrial custody and some onerous types of pretrial, non-custodial

restrictions constitute a Fourth Amendment seizure."  Id. (emphasis added).

In DiBella, the plaintiffs were issued a summons but never arrested.  Id.  They never

posted bail, they had no travel prohibitions, and they were not required to contact pretrial

services.  Id.; compare Gallo, 161 F.3d at 222 (plaintiff required to post a $10,000 bond and

report to pretrial services weekly, and travel restricted to Pennsylvania and New Jersey).  The

plaintiffs, however, had to attend multiple trial proceedings.  DiBella, 407 F.3d at 600, 603.  The

court held this did not constitute a Fourth Amendment seizure and rejected the plaintiffs'

malicious prosecution claim.

An identical outcome is compelled by the facts of this case.  Plaintiff was never formally

arrested or taken into custody.  He was given the opportunity to surrender voluntarily at the

District Magistrate Judge's office, but under these circumstances a voluntary surrender is not a

Fourth Amendment seizure.  See Karam v. City of Burbank, 352 F.3d 1188, 1194 (9th Cir.

2003); Esposito v. Galli, No. 4:04-CV-475, 2006 WL 2322487, at *9 (M.D. Pa. Aug. 9, 2006) (no

seizure where plaintiff voluntarily appeared for arraignment following issuance of arrest

warrant).  Moreover, Plaintiff's ability to travel was not restricted, and he was not required to

contact pretrial services.  To be sure, Plaintiff was released on a $5,000 unsecured bail bond.

Nevertheless, Plaintiff was not required to post money or other collateral, and this fact alone is

insufficient to constitute a Fourth Amendment seizure.  See Esposito, 2006 WL 2322487, at *9

(no seizure where plaintiffs "released on a $20,000 unsecured bond with no restrictions or conditions on their freedom of movement").  Therefore, Plaintiff was not subject to the "onerous" pretrial restrictions implicating the Fourth Amendment.

Plaintiff argues that the five conditions imposed in connection with the unsecured bail bond, as well as the prohibition against contact with the victim, are sufficiently onerous to withstand summary judgment.  This argument is without merit.  The five conditions of the unsecured bail bond are standard release conditions imposed in all cases of pretrial release, including release on recognizance, and the restraints are de minimis.  See Pa. R. Crim. P. 524(C)(1), 526(A).  As to the prohibition that Plaintiff avoid contact with the victim, this restriction is hardly onerous considering the victim – Defendant Golya – is Plaintiff's estranged brother.  Accordingly, because Plaintiff has failed to demonstrate a Fourth Amendment seizure, his malicious prosecution claim fails as a matter of law, and summary judgment will be granted to Officer Evans and Defendant Golya.[10]

### 2) Abuse of Process

Plaintiff asserts an abuse of process claim, contending Officer Evans and Defendant Golya utilized the criminal proceedings for an improper purpose.  Plaintiff, however, must show a Fourth Amendment violation in addition to the common law elements for abuse of process to

---

[10]Similarly, summary judgment will be granted to Defendant Golya and Officer Evans on Plaintiff's Fourth Amendment seizure claim.

obtain redress under 42 U.S.C. § 1983.  Litzenberger v. Vanim, No. Civ. A. 01-5454, 2002 WL 1759370, at *3 (E.D. Pa. July 31, 2002); see also Berg v. County of Allegheny, 219 F.3d 261, 268 (3d Cir. 2000) ("Section 1983 . . . does not provide redress for common law torts – the plaintiff must allege a violation of a federal right.").  Because Plaintiff did not suffer a Fourth Amendment seizure in connection with the criminal proceedings, his § 1983 abuse of process claim fails.  Therefore, Defendants' motions for summary judgment are granted as to this claim.[11]

Even if Plaintiff was relieved of the burden to prove a Fourth Amendment violation, Defendant Golya and Officer Evans are still entitled to summary judgment.  "'[A] section 1983 claim for malicious abuse of process lies where prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law.'"  Williams v. Fedor, 69 F. Supp. 2d 649, 673 (M.D. Pa. 1999), aff'd mem., 211 F.3d 1263 (3d Cir. 2000).  The crux of this action is the perversion of the legal process to achieve an objective other than its intended purpose.  Id.  "'When process is used to effect an extortionate demand, or to cause the surrender of a legal right, or is used in any other way not so intended by proper use of the

---

[11]Defendants Golya and HPD also contend the statute of limitations bars Plaintiff's abuse of process claim.  This contention, however, was asserted for the first time in their reply brief.  (See Defs. Golya's & HPD's Reply Br. Supp. Mot. Summ. J., Dkt. Entry 64, at 11 n.3.) As a result, the Court will not consider this argument.  See Fernandes v. Warden, USP-Lewisburg, Civ. No. 1:CV-06-2394, 2007 WL 1120520, at *3 n.3 (M.D. Pa. Apr. 13, 2007); D'Alessandro v. Bugler Tobacco Co., Civ. A. No. 05-5051 (JBS), 2007 WL 130798, at *2 (D.N.J. Jan. 12, 2007).

process, a cause of action for abuse of process can be maintained.'" Id. (quoting Brown v. Johnston, 675 F. Supp. 287, 290 (W.D. Pa. 1987)).  To establish such a claim, "there must be some proof of a 'definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of [the] process.'" Id. (quoting Feldman v. Trust Co. Bank, No. Civ. A. 93-1260, 1993 WL 300136, at *4 (E.D. Pa. Aug. 2, 1993)).

In this matter, there is no evidence that the criminal proceedings were perverted to achieve an illegitimate objective.  Plaintiff complains that the prosecution was retaliation for acts "independent of any alleged crime," (Pl.'s Combined Br. Opp'n to Defs. Mot. Summ. J., Dkt. Entry 62, at 15), but even if true, this is relevant to the initiation – not the perversion – of the criminal proceedings.  Regardless of Defendants' motives, Plaintiff has adduced no evidence that the criminal proceeding was perverted by extortion, blackmail, or intimidation.  In short, Plaintiff has not offered evidence of any definite act or threat aimed to achieve an illegitimate objective.  Because there is no basis for a reasonable jury to infer that the criminal proceeding was instituted for a reason other than to secure a conviction, summary judgment is granted as to Plaintiff's § 1983 abuse of process claim.

### 3) False Arrest

Plaintiff asserts a § 1983 false arrest claim against Officer Evans and Defendant Golya. Plaintiff argues that he was arrested without probable cause in violation of his Fourth Amendment right to be free from unreasonable seizures.

"To state a claim for false arrest, a plaintiff must [establish] two elements: (1) that there was an arrest; and (2) that the arrest was made without probable cause." Barnes v. Plainsboro Twp. Police Dep't, Civ. A. No. 07-1776 (JAG), 2007 WL 2011264, at *2 (D.N.J. July 6, 2007). In this case, Plaintiff is unable to show that he was arrested.

As recognized by the Honorable Sylvia H. Rambo of this Court, an arrest may be defined as:

"the taking, seizing, or detaining of the person of another, (1) by touching or putting hands on the arrestee; (2) or by any act that indicates an intention to take the arrestee into custody and that subjects the arrestee to the actual control and will of the person making the arrest; or (3) by the consent of the person to be arrested. There can be no arrest where there is no restraint and the restraint must be under real or pretended legal authority. However, the detention of a person need not be accompanied by formal words of arrest or station house booking in order to constitute 'arrest.' Whether the restraint or detainment was sufficient to rise to the level of arrest will in many cases turn on the length of the detention, and the degree of restraint. The ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with formal arrest."

Bristow v.Clevenger, 80 F. Supp. 2d 421, 436 (M.D. Pa. 2000) (quoting 5 Am. Jur. 2d Arrest § 2 (1995)). And as articulated by our Court of Appeals in Berg, 219 F.3d at 269, "[a] person is seized for Fourth Amendment purposes only if he is detained by means intentionally applied to terminate his freedom of movement."

As explained above, Plaintiff was not seized by law enforcement authorities in this case. He was never subjected to a "restraint on freedom of movement of the degree associated with [a] formal arrest." Bristow, 80 F. Supp. 2d at 436 (quotations omitted). Accordingly, Officer

Evans and Defendant Golya are entitled to summary judgment on the § 1983 false arrest claim.

### 4) Conspiracy

Plaintiff alleges that Officer Evans and Defendant Golya conspired to violate his constitutional rights.  In light of the absence of evidence of a violation of any constitutionally-protected interest, this claim fails as well.  See Holt Cargo Sys., Inc. v. De. River Port Auth., 20 F. Supp. 2d 803, 843 (E.D. Pa. 1998) (viable § 1983 conspiracy claim requires an actual deprivation of the plaintiff's constitutional rights).

### 5) Supervisor Liability Against Defendant Golya

In Count II of his complaint, Plaintiff claims Defendant Golya is liable under the theory that he failed to properly supervise Officer Evans.  Because Plaintiff has not presented a viable § 1983 claim against Officer Evans, his claim of supervisory liability fails as well.  Even if a viable § 1983 claim against Officer Evans had been presented, however, summary judgment in favor of Defendant Golya on the supervisory liability claim would be warranted.

In a § 1983 claim premised on the defendant's alleged inadequate supervision of a subordinate employee, the "threshold question is whether the defendant had supervisory authority over the subordinate who engaged in wrongdoing and some specific duty to act."  1 Ivan E. Bodensteiner & Rosalie Berger Levinson, State and Local Government Civil Rights Liability § 1.5; see also Robinson v. City of Pittsburgh, 120 F.3d 1286, 1294-95 (3d. Cir. 1997), abrogated on other grounds, Burlington N. & Santa Fe Ry. Co. v. White, 126 S. Ct. 2405 (U.S.

July 11, 2006).  Thus, the inquiry is whether the defendant "control[led] or ha[d] the right to control [the subordinate's] physical conduct in the performance of his job."  Robinson, 120 F.3d at 1295.

Here, at the time of the events in question, Defendant Golya was a police officer for the HPD.  Officer Evans, on the other hand, was employed by the DPD, and it is undisputed that he was not hired by the HPD until March or April, 2003, after the charges against Plaintiff were dismissed.  Because Officer Evans did not work for the HPD, Defendant Golya could not control, nor did he have the right to control, Officer Evans's physical conduct in the performance of his job.  In other words, Defendant Golya did not exercise supervisory authority over Officer Evans for purposes of § 1983 liability.  Consequently, summary judgment will be granted to Defendant Golya on Count II of the Complaint.

### 6) Monell Claims

Plaintiff also asserts Monell claims against HPD and DPD, respectively.  As neither Officer Evans nor Defendant Golya caused any constitutional injury to Plaintiff, there can be no Monell liability.  See Toth v. Bristol Twp., 215 F. Supp. 2d 595, 602 (E.D. Pa. 2002).

Even if a constitutional violation had occurred, DPD correctly argues that it is not a "person" for purposes of § 1983 and, therefore, cannot be liable.  The Third Circuit has not

released a precedential opinion on the issue,[12] but other courts in this circuit that have

addressed this issue have concluded that a police department is merely a subunit of the local

government and is not amenable to suit under § 1983.  See Shilling v. Brush, No. 4:05-CV-871,

2005 WL 2100707, at *3 (M.D. Pa. Aug. 26, 2005); Johnson v. City of Erie, 834 F. Supp. 873,

878-79 (W.D. Pa. 1993); PBA Local No. 38 v. Woodbridge Police Dep't, 832 F. Supp. 808, 825-

26 (D.N.J. 1993).  This view is in accord with the majority of courts outside the Third Circuit that

have addressed this issue.  See, e.g., United States v. Kama, 394 F.3d 1236, 1239-40 (9th Cir.

2005); Dean v. Barber, 951 F.2d 1210, 1214-15 (11th Cir. 1992); Hall v. Neal, No. 5:04-CV-65-

OC-10GRJ, 2006 WL 462600, at *3 (M.D. Fla. Feb. 27, 2006); Nicholson v. Lenczewski, 356 F.

Supp. 2d 157, 163-64 (D. Conn. 2005); Hoffman v. Hunt, 845 F. Supp. 340, 344 n.1 (W.D.N.C.

1994); Stump v. Gates, 777 F. Supp. 808, 815-16 (D. Colo. 1991); but see Chin v. City of

Baltimore, 241 F. Supp. 2d 546, 548 (D. Md. 2003) (holding Baltimore City Police Department

is a "person" amenable to suit under § 1983).

     In Johnson, the court observed that a police department "is a sub-unit of the city

government and, as such, is merely a vehicle through which the city fulfills its policing

---

[12]In Colburn v. Upper Darby Township, 838 F.2d 663, 671 n.7 (3d Cir. 1988), the
defendant police department argued it was not a "person" subject to § 1983 liability.  The court
did not resolve this question, but instead treated the defendant township and police department
as a single entity for purposes of the appeal and indicated, on remand, that the district court
should consider whether the police department was a proper party.  Id.  On remand, the issue
was not mentioned by the district court.  See Colburn v. Upper Darby Twp., No. Civ. A. 86-
2132, 1990 WL 74200 (E.D. Pa. May 31, 1990).

functions." 834 F. Supp. at 878-79.  Here, Plaintiff's complaint reveals that the DPD is a sub-unit of Duryea Borough.  (See Compl., Dkt. Entry 1, ¶ 8 ("Duryea Police Department is an agency of the Borough of Duryea.").)  In light of the above-cited authority, along with Plaintiff's concession that the DPD is a sub-unit of the Duryea Borough and his failure to oppose DPD's contention, the Court concludes that the DPD is not a proper party to this suit.[13]  Therefore, summary judgment will be granted in favor of DPD.

Summary judgment is also warranted with respect to Plaintiff's claim against the HPD.[14] The criminal process was initiated by Officer Evans, who at the time was employed only by the DPD.  Thus, the DPD, not the HPD, is the municipal entity whose policies relating to training would be at issue, and Plaintiff cannot establish any connection between HPD's policies and Officer Evans's conduct.  Moreover, the HPD cannot be liable for the actions of Defendant Golya because there is no evidence he was acting on behalf of the HPD, rather than in a purely

---

[13]Additionally, under Pennsylvania law, a borough – but not its sub-units – may sue and be sued.  See 53 Pa. Stat. Ann. § 46201(2).  Whether the police department has the capacity to sue or be sued under state law is relevant to this analysis.  See, e.g., Dean, 951 F.2d at 1214-15 (county sheriff's department lacks capacity to be sued under Alabama law); Stump, 777 F. Supp. at 816 (municipalities and counties, but not police departments and county coroner offices, may sue and be sued under Colorado law); see also Fed. R. Civ. P. 17(b) (capacity to sue and be sued determined "by the law of the individual's domicile," "by the law of the state under which [a corporation] was organized," or "by the law of the state in which the district court is held").

[14] The HPD does not contest its amenability to a § 1983 lawsuit, but argues it is not liable because (1) Officer Evans was employed only by the DPD at the time of Plaintiff's arrest, and (2) Plaintiff cannot establish causation between HPD's policies or inadequate training and Plaintiff's injury.  (Defs. Golya's & HPD's Br. Supp. Mot. Summ. J. 7-11.)

private capacity, when he reported the alleged theft and provided information to Officer Evans.

See Mark v. Borough of Hatboro, 51 F.3d 1137, 1150-51 (3d Cir. 1995) (fire fighter acting as a

private party when he intentionally set fires).  His actions resembled those of a private citizen

reporting criminal activity to the police.  Cf. Pitchell v. Callan, 13 F.3d 545, 548 (2d Cir. 1994)

("Liability . . . may exist where off-duty police officers perform duties prescribed generally for

police officers.").  Finally, even if Defendant Golya was acting on behalf of the HPD or as a

police officer, Plaintiff has not offered evidence linking the alleged training deficiencies he

identifies with Defendant Golya's conduct and Plaintiff's injury, and there is no evidence HPD

was deliberately indifferent to the need for better training.  Therefore, the HPD would be entitled

to summary judgment even if there was a viable constitutional claim.

### C. State Law Claims

Plaintiff asserts state law claims of defamation, invasion of privacy, conspiracy, and

false arrest against Defendant Golya and Officer Evans.  In his brief in opposition to the

summary judgment motions, Plaintiff indicated he is withdrawing the defamation and invasion of

privacy claims.  (See Pl.'s Combined Br. Opp'n to Defs. Mot. Summ. J. at 15.)  Therefore,

summary judgment will be granted as to these claims.

As to Plaintiff's common law false arrest claim, the analysis set forth above applies here.

Because there was no seizure of Plaintiff's person, a false arrest claim will not lie.

Finally, both Defendants are entitled to summary judgment on Plaintiff's civil conspiracy

claim.  Where, as here, a complaining party cannot show a valid claim for the alleged underling tortious act of false arrest, a civil conspiracy claim will not lie.  See Nix v. Temple Univ. of Commw. Sys. of Higher Educ., 596 A.2d 1132, 1137 (Pa. Super. Ct. 1991); Rosen v. Tesoro Petroleum Corp., 582 A.2d 27, 33 (Pa. Super. Ct. 1990).  As explained in Pelagatti v. Cohen, 536 A.2d 1337, 1342 (Pa. Super. Ct. 1987), "absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act."

## III. CONCLUSION

For the reasons stated, Defendants' motions for summary judgment will be granted.  An appropriate Order follows.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN GOLYA** | : | |
| **Plaintiff** | : | |
| **v.** | : | **3:CV-05-0100** |
| | : | **(JUDGE VANASKIE)** |
| **STEPHEN GOLYA, ROBERT EVANS,** | : | |
| **TODD ROMANCZUK, THE DURYEA** | : | |
| **POLICE DEPARTMENT, HUGHESTOWN** | : | |
| **POLICE DEPARTMENT** | : | |
| **Defendants** | : | |

## ORDER

NOW, **THIS 9th DAY OF AUGUST, 2007,** for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1. Defendants Stephen Golya's and Hughestown Police Department's Motion for Summary Judgment (Dkt. Entry 43) is **GRANTED.**

    a) Judgment shall be entered in favor of Stephen Golya as to Count II, Count III, Count IV, Count V – Invasion of Privacy, Count V – Conspiracy, and Count VI of Plaintiff's Complaint (Dkt. Entry 1) and against Plaintiff.

    b) Judgment shall be entered in favor of Hughestown Police Department as to Count I of Plaintiff's Complaint (Dkt. Entry 1) and against Plaintiff.

2. Defendants Robert Evans's and Duryea Police Department's Motion for Summary Judgment (Dkt. Entry 50) is **GRANTED.**

    a) Judgment shall be entered in favor of Robert Evans as to Count III, Count IV,

Count V – Invasion of Privacy, Count V – Conspiracy, and Count VI of Plaintiff's

Complaint (Dkt. Entry 1) and against Plaintiff.

      b) Judgment shall be entered in favor of Duryea Police Department as to Count I

of Plaintiff's Complaint (Dkt. Entry 1) and against Plaintiff.

      3.  The Clerk of Court is directed to mark this matter **CLOSED**.


                        **s/ Thomas I. Vanaskie**
                        Thomas I. Vanaskie
                        United States District Judge